## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LILLIAN VIGNOLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 16-cv-00713 |
| | ) | |
| 151 NORTH KENILWORTH CONDOMINIUM | ) | Honorable Andrea R. Wood |
| ASSOCIATION, PAMELA PARK, and KOVITZ | ) | |
| SHIFRIN NESBIT, a Professional Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF LILLIAN VIGNOLA'S MEMORANDUM IN SUPPORT OF HER RESPONSE TO DEFENDANT 151 NORTH KENILWORTH CONDOMINIUM ASSOCIATION'S MOTION TO DISMISS

Plaintiff Lillian Vignola is a 94-year-old woman with a disability who, working with her attorney, Paul Bernstein, requested a reasonable accommodation to be allowed to rent out her home during a stay in a 24-hour rehabilitative facility arising from her disability. Ms. Vignola and her attorney answered all questions raised by Defendant and provided all documentation requested. Nonetheless, her request for a reasonable accommodation was denied.

As a result of Defendant's refusal to grant Ms. Vignola a reasonable accommodation, she has filed the instant suit alleging a violation of the Fair Housing Act. She has requested monetary and injunctive relief.

## I. INTRODUCTION

Ms. Vignola's fair housing claim against the attorney defendants states a cause of action sufficient to withstand a motion pursuant to Fed. R. Civ. P. 12(b)(6). Ms. Vignola has alleged, and can prove, that she exercised her rights under the Fair Housing Act by requesting a

1

reasonable accommodation, an exception to the condominium association's policy limiting rentals. Defendant denied the reasonable accommodation request.

As a result of Defendant's denying her request for a reasonable accommodation, Ms. Vignola must choose between losing her home to a sale she does not want or paying double rent due to her disability. Under the purported rule, she must advertise her home for sale for one year before leasing it, risking that it will sell and she will have no home to which to return after her disability-mandated stay in a rehabilitation facility. Alternatively, she can continue to pay what amounts to double rent, the association fees as well as the cost of the rehabilitation facility. While the policy limiting rentals is facially neutral, Ms. Vignola has requested a reasonable accommodation because her disability requires something different in order for her to enjoy the her home—in this case, the right to return to it. As is set forth more fully below, Ms. Vignola's request is no different from a condominium homeowner asking to be allowed to park closer to his or her home, in a space designated for people with disabilities or one that is simply closer to the entrance, than his or her assigned space because of a mobility-related disability. In both cases, a reasonable accommodation—an exception to an otherwise neutral policy—is necessary for the homeowner who has a disability to enjoy the home.

## II.     RELEVANT ALLEGATIONS

Ms. Vignola is a 94-year-old woman whose home is part of Defendant Association. Complaint, p. 1. She experienced a fall that required her to undergo 24-hour care in a rehabilitation facility. *Id*., ¶¶ 17 – 18. Ms. Vignola intends to return to her home when her disability improves enough to allow her to live alone. *Id*. She currently pays condominium association assessments and related costs while also paying to live in the facility. *Id*., p. 1.

2

Ms. Vignola requested Defendant make a reasonable accommodation, an exception to a rental policy. Complaint, ¶ 19. In response, Defendant cited a rule or policy that a homeowner list his or her property for at least one year before the association will grant permission to rent it. *Id*., ¶ 4, 20. If Ms. Vignola is forced to list her home for sale, as a condition of gaining permission to lease it, then it may sell—then, the home would not be available for her to return to after she completes rehabilitation. *Id*., ¶ 21. Defendant denied Ms. Vignola's request for a reasonable accommodation, an exception to purported policy. *Id*., ¶ 20.

Defendant has not disputed Ms. Vignola's allegation that the rule does not exist. Complaint, ¶¶ 7, 22. If the rule does not exist, then the denial of the accommodation is simply arbitrary and a ploy to deprive Ms. Vignola of her home.

Ms. Vignola has also alleged that Defendant discriminates against families with children. Complaint, ¶ 32. This states a separate cause of action under the FHA.

## III.   LEGAL STANDARD FOR MOTION TO DISMISS

The District Court for the Northern District of Illinois, denied a motion pursuant to Fed. R. Civ. P. 12(b)(6) concerning a FHA claim, applying Fed. R. Civ. P. 8(a)(2):

> "[T]he complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what.. . the claim is and the grounds upon which it rests . . . .' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Zamudio v. HSBC N.Am. Holdings, Inc*., No. 07 C 4315, 2008 U.S. Dist. LEXIS 13952 at *3 [N.D. Ill. Feb. 20, 2008, quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. at 1964 (1970)]. **Exhibit A**.[1]

Like *Zamudio* (*Id*.), this is a FHA case. However, unlike *Zamudio*, where complex and proprietary credit scoring formulas were at issue (*Id*., at *3) no part of the complaint is "speculative." In fact, the denial of Ms. Vignola's request is undisputed. *See* Defendant's Memorandum, p. 2.

---

1   For convenience, cases that may be difficult to locate online are included with this pleading as exhibits.

Defendants, moving for dismissal, have not identified any part of the claim that is "speculative" or how the claim fails to state a claim for relief other than arguing different interpretations of the facts. This is a matter for the trier of fact and not appropriate for a dispositive motion.

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The purpose of the Fair Housing Act ("FHA") is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Defendant correctly sets forth relevant parts of 42 U.S.C. § 3604 governing reasonable accommodation.

4

Defendant's Memorandum, pp. 3 – 4. Defendant sets forth a 1996 case, *Roseborough v. Cottonwood Apartments*, which it cites as 1996 WL 4907147 at 2 (N.D. Illinois, August 26, 1996) as authority for the elements it urges are required to state a cause of action. *Id*. at p. 3. However, the Seventh Circuit Court of Appeals more recently enunciated the elements of a claim for violation of 42 U.S.C. § 3604(f)(2) in the 2006 case, *Wisconsin Community Services v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir., 2006):

> "The basic elements of an FHAA accommodation claim are well-settled. First, the requested accommodation must be reasonable, which, as we have stated, is a "highly fact-specific inquiry and requires balancing the needs of the parties. An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Oconomowoc Residential Programs,* 300 F.3d at 784 (internal citations omitted). In the zoning context, a municipality may show that a modification to its policy is "unreasonable if it is so at odds with the purpose behind the rule that it would be a fundamental and unreasonable change." *Id.* (internal quotation marks and citations omitted).
>
> "Second, the requested accommodation must be "necessary," meaning that, without the accommodation, the plaintiff will be denied an equal opportunity to obtain the housing of her choice [*citations omitted*]. This has been described by courts essentially as a causation inquiry. *See, e.g., Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains,* 284 F.3d 442, 460 (3d Cir.2002) ("This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be necessary." (internal quotation marks and citations omitted)).
>
> "In addition, the FHAA links the term "necessary" to the goal of "equal opportunity." 42 U.S.C. § 3604(f)(3)(B). The "equal opportunity" element limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified. Instead, the statute requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market. We have enforced this limitation by asking whether the rule in question, if left unmodified, hurts "handicapped people *by reason of their handicap,* rather than ... by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *See Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park,* 171 F.3d 437, 440 (7th Cir.1999) (emphasis in original)."

In the instant case, Ms. Vignola has alleged she requested a reasonable accommodation: waiver or modification of a policy. Complaint, ¶ 19. Because reasonableness is "fact specific" (*Wisconsin*, 465 F.3d at 749), this case is inappropriate for dismissal at this early stage.

5

Ms. Vignola has also alleged that, without the accommodation, she will be unable to enjoy her housing. Complaint, ¶ 21. Ms. Vignola is not merely alleging that she cannot afford the condominium. To the contrary, she cannot afford both the alternative housing, a rehabilitation facility, which her disability temporarily dictates she maintain (*Id*. at 24) and her current housing. *Id*. at 21. If she leases out her condominium while she is in the facility, she will be able to return to it. *Id*. If she leases it and it sells, she will not be able to return to it—a concern not present for non-disabled people who want to sell or lease their home for non-disability-related reasons, such as a residential move. In other words, Ms. Vignola needs the accommodation to put her in a position to compete in the housing market with people who do not have disabilities—people who sell and lease their homes when they are ready to move, not when they require a temporary stay in a 24-hour rehabilitation facility. *Id*. at 5 – 6.

Because Ms. Vignola has stated a cause of action under the Fair Housing Act, the Motion to Dismiss must be denied.

## IV.     ARGUMENT

### A.     Ms. Vignola is covered by the Fair Housing Act.

Defendants attempt to use Ms. Vignola's very disability, the one for which she has requested an accommodation, as a shield to liability. They state that she does not live in the condominium unit. Defendant's Memorandum, pp. 4 – 5. However, Ms. Vignola's temporary residence outside of her unit due to disability is what gives rise to the need for an accommodation. Complaint, ¶ 5. The condominium is her home, and she intends to return. *Id*. If Defendant is intending to argue that Ms. Vignola does not fall under the FHA because the conduct of which she claims is post-acquisition, that argument fails. It is well-settled that at least

6

42 U.S.C. 3604 (a) and (b) can support claims of post-acquisition discrimination. *Bloch v. Frischholz*, 587 F.d 771, 780 – 781 (7th Cir., 2009).

Here, it is clear that the requested accommodation would assist Ms. Vignola in maintaining use of her home, in the form of an ability to return to it, similar to that enjoyed by homeowners without disabilities. Defendants cite *Bronk v. Ineichen*, 54 F. 3d 425, 429 (7th Cir., 1995) for the proposition that "reasonable" and "necessary" are factors to be considered in a reasonable accommodation case. Defendant's Memorandum, p. 4. However, the case concerned a disputed question about whether a particular dog was an assistance animal. *Bronk*, 54 F. 3d at 429. This question was disputed, so the case was not appropriate for summary disposition. *Id*. The question went to the jury, and the appeal arose, at least in large part, because of disputes about the jury instructions or procedure. *Id*.

Because whether the accommodation Ms. Vignola has requested is "reasonable" is a question of fact, this case is inappropriate for disposition through dismissal at this early stage.

**B.    Condominium Associations Can Be Required to Alter Rules to Comply with the FHA.**

Defendant relies on a 1999 case, *Hemisphere*, 171 F.3d. At 437 (7th Cir., 1999) for the proposition that only rules that hurt people with disabilities "by reason of their handicap" are subject to the reasonable accommodation requirements of the FHA. Defendant's Memorandum, p. 5. However, the case concerns whether a Village has to grant an accommodation with regard to a neutral rule, like zoning, by, for example, allowing greater density so that a development that includes people with disabilities can be built. Both people with and without disabilities are equally affected by the rule, modified or not—both people with and without disabilities live in the less-dense housing and the more concentrated housing. The case has been refined by more

7

recent cases. The Seventh Circuit Court of Appeals, in another case concerning municipal policy,

has reasoned:

> "accommodation in the FHAA's parlance is the means by which disparate impact is
> alleviated. If a zoning or building-code rule bears more heavily on disabled than on other
> persons, the city must change the rules to the extent necessary to redress the adverse
> effect. In the absence of disparate impact, however, there is no need for accommodation
> under the FHAA." *Wisconsin Community Services v. City of Milwaukee*, 413 F.3d 642,
> 646 (7th Cir., 2005).

Under the Seventh Circuits' standard, a municipality does not need to make housing cheaper to

build by, for example, lowering cost by allowing denser population, because everyone would

benefit from such a lowered cost. The issue is not at all specific to people with disabilities, much

less, as in the instant case, a specific person with a disability.

Rather than municipal zoning, condominium rules and policies provide a closer analogy

to the instant case, where a condominium policy affecting a person with a disability is at issue.

An example would be assigned parking where a person with a disability needs a spot closer to

his or her home.

Courts have held that condominium rules must be used to accommodate people with

disabilities. A thorough discussion of the relationship between the condominium association's

power to promulgate rules and the necessity of complying with the FHA by accommodating

people with disabilities is *Gittelman v. Woodhaven Condominium Ass'n, Inc.,* 972 F.Supp. 894,

903 (D.N.J., 1997), where the court explores the requirement that a condominium board

promulgate rules to allow for a reasonable accommodation, in that case, a parking space:

> "The gravamen of Mr. Gittleman's Complaint is that the Association failed to promulgate
> appropriate rules so that he could enjoy equal privileges in the use of the Condominium's
> common elements. The very terms of the By-Laws empower the Association to make
> rules and regulations governing the use and enjoyment of the common elements.
> (Association By-Laws Section 4). The Association's failure to promulgate appropriate
> rules despite its apparent ability to do so is precisely the type of conduct regulated by the
> FHAA. *See* 42 U.S.C. § 3604(f)(3)(B) (discrimination includes "a refusal to make

8

reasonable accommodations in *rules,* policies, practices, or services, when such accommodations may be necessary to afford such person *equal opportunity to use and enjoy* a dwelling") (emphasis added); *see also* 24 C.F.R. § 100.204(b) ('Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.')."

*Gittelman* (*Id*.) is only persuasive authority because it is a New Jersey U.S. District Court decision. However, the court relied, in part, on 24 C.F.R. § 100.204(b). Using the a parking space as an example, the regulation makes it clear that the FHA makes it incumbent upon condominium associations to alter rules to accommodate people with disabilities.

### C. "Reasonableness" is a Question of Fact and Is Inappropriate for Disposition through a Motion to Dismiss.

In case law cited by Defendant for other arguments (Defendant's Memorandum, p. 4), summary disposition was denied because "reasonableness" is a question of fact. *Bronk*, 54 F. 3d 425, 429. Defendant itself states that whether a requested accommodation is reasonable is a "fact-specific inquiry."

Defendant cites *Cowart v. City of EauClaire*, 571 F.Supp. 2d 1005 (2008). This is a case where summary judgment was granted, largely because Plaintiffs did not follow procedures and did not properly submit a list of disputed facts. *Id*. at 1009. However, the reason summary judgment was granted, at least in part, because, after discovery: "Plaintiffs' claim fails because they have not adduced evidence regarding their alleged handicaps. In addition, they have not shown that a denial of a variance to the city ordinance prohibiting a third dog denies them the ability to obtain housing." *Id*. The reference to the third dog is probably because the plaintiffs claimed to need two service dogs. *Id*. at 1005.

Defendant also cites *Davieri Development Group, LLC v. Village of Wheeling*, 934 F.

9

Supp. 2d 987 (2013). Defendant's point about "amelioration" is in this case, in a quote from *Wisc. Comm'y Servs*., 465 F.3d at 749. However, like *Wisconsin*, *Davieri* addresses municipal zoning. *Davieri,* 934 F. Supp. at 1005. The *Davieri* opinion is not about the standard to state a claim under the FHA, but represents the denial of injunctive relief for a residence for people with disabilities that seemed to require a change in zoning law. *See id*. At 987. It is a Federal U.S. District Court opinion, not mandatory authority for this Court. Further, as a case involving zoning law, it is inapposite here. *Supra*, pages 7 – 8.

Because "reasonableness" is a question of fact, it is not appropriate for disposition in a motion to dismiss. In a surprising case, an Indiana Federal District Court, within the Seventh Circuit, denied summary judgment in a case where "reasonableness" of an accommodation was at issue. After setting forth the parties' view of whether an accommodation was requested or granted, the court stated:

> One might be tempted here to say that ends the inquiry, as the Association says I should. But the Seventh Circuit has found that under these circumstances, what a plaintiff labels as "reasonable" doesn't carry the day. It's still up to the fact-finder to decide whether the accommodation requested was actually reasonable. *Fair Hous. Ctr. Of Cent. Ind. v. Brookfield Farms Homeowners' Ass'n*, p. 5, (N.D. Ind., 2016). **Exhibit B**.

The Court relied upon Seventh Circuit cases, *Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891,* 896 (7th Cir. 1996) and *Dadian v. Village of Wilmette,* 269 F. 3d 831, 838 (7th Cir. 2001) ("Whether a requested accommodation is reasonable is highly fact-specific, and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff."). "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it," but is unreasonable if it is financially burdensome or "requires a fundamental alteration in the nature of the program." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). *Brookfield*, N.D. Ind., p.5.

10

### D.    Ms. Vignola has Standing to Assert Familial Discrimination.

The FHA confers standing that is not limited to people who are in a protected class. Ms.

Vignola does not have to be a person with children under age 18, or an actual landlord, to

maintain her case.

The broad standing of the FHA is well established. The Seventh Circuit reiterated that

one need not be a member of the protected class whose rights one sought to vindicate in United

*Farm Bureau Mut. Ins. Co., Inc. v. Metropolitan Human Relations Com'n*, 24 F.3d 1008, 1015-

1016 (7ᵗʰ Cir., 1994):

> "We also reject Farm Bureau's contention that American Family does not include a claim
> of prohibited redlining simply because the claim is made by a white person. Implicit in
> this argument is the notion that white people are not harmed by discrimination or
> segregation, and thus could not have been intended beneficiaries of the federal Fair
> Housing Act; and that it is perfectly acceptable to create segregated neighborhoods
> provided that the means used are to move white people out by declining to renew their
> insurance. We find both propositions offensive and repugnant to the purpose and goals of
> the Fair Housing Act. The race of the person complaining of impermissible redlining is
> irrelevant. See Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34
> L.Ed.2d 415 (1972) (white tenant of apartment complex has standing under the Fair
> Housing Act to challenge the racially discriminatory practices of his landlord); see also
> Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66
> (1979) (white residents have standing under the Fair Housing Act to challenge racial
> steering taking place in their neighborhood). The fact that Kesterke is white does not bar
> him from bringing a complaint of redlining under Indiana state law or the federal Fair
> Housing Act."

Living under the boot heel of a policy that violates the FHA is enough to satisfy the de minimus
requirement of injury to confer standing as the concept has been expanded by Congress in
enacting the FHA. The Seventh Circuit has addressed standing under the FHA many times. It
summarized the legislative history supporting expanded standing in *Gorski v. Troy*, 929 F.2d
1183, 1188 (7ᵗʰ Cir., 1991):

> "The Gorskis' ability to sue, however, does not rest exclusively on their having attained
> familial status. While the FHA uses the definition of 'familial status' to define what
> constitutes prohibited housing discrimination, it does not limit standing to persons within
> the class defined by that term. Section 3613 provides that "an aggrieved person may
> commence a civil action" in an appropriate court. 42 U.S.C. Sec. 3613(a)(1)(A). 7 The
> Act does not define 'aggrieved person' in terms of familial status.

'Aggrieved Person" includes any person who--

'(1) claims to have been injured by a discriminatory housing practice; or

'(2) believes that such person will be injured by a discriminatory housing practice that is about to occur.'

"Id. Sec. 3602(i).

"In amending the definition of 'aggrieved person,' Congress intended to extend broad standing principles to those seeking redress under the FHA. The House Judiciary Committee commented that the term 'aggrieved persons' in the 1988 amendments 'adopts as its definition language similar to that contained in ... existing law, as modified to reaffirm the broad holdings of [the Supreme Court's decisions in Gladstone and Havens Realty ].' H.R.Rep. No. 711, reprinted in 1988 U.S.Code Cong. & Admin.News 2173, 2184 (1988). In Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), the Court held that, because Congress intended standing under the FHA 'to extend to the full limits of Art. III, the normal prudential rules do not apply[.] [A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed.' Id. at 103 n. 9, 99 S.Ct. at 1609-10 n. 9. Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), reaffirmed this principle. The Court held that the only requirement for standing to sue under the FHA 'is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered "a distinct and palpable injury[.]" ' Id. at 372, 102 S.Ct. at 1120-21 (quoting Warth, 422 U.S. at 501, 95 S.Ct. at 2206).

Like so many advocates, testers, fair housing centers, and concerned community members before her, Ms. Vignola has standing to vindicate the fair housing rights of herself, her neighbors, her potential tenants, and the community at large. This includes discrimination on the basis of familial status that may be happening now and discrimination that is about to occur when she rents (or even sells) her own unit.

Ms. Vignola has standing to demand that her condominium association comply with the FHA. The motion to dismiss must be denied.

12

## V.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss must be denied. Plaintiff cites no authority for taxing costs to Plaintiff and has not issued any letter under Federal Rule of Civil Procedure 11.

Respectfully submitted,

LILLIAN VIGNOLA

/s/ Kelli Dudley
Kelli Dudley,   An Attorney for Lillian Vignola

Kelli Dudley
Law Office of Kelli Dudley
Attorney Number:  40828
1658 Milwaukee Avenue
#100-8377
Chicago, Illinois  60647
Telephone:  (312) 771-9770
attorneykelli@sbcglobal.net

## CERTIFICATE OF SERVICE

I, Kelli Dudley, an attorney, hereby certify that on or before May 6, 2016, I filed the foregoing Memorandum in Support of Plaintiff's Response to Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kelli Dudley

Kelli Dudley

13