IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILLIAN VIGNOLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16-cv-00713 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| 151 NORTH KENILWORTH | ) |
| CONDOMINIUM ASSOCIATION, | ) |
| PAMELA PARK, and KOVITZ SHIFRIN | ) |
| NESBIT, a professional corporation, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Lillian Vignola claims that Defendant 151 North Kenilworth Condominium Association ("Condo Association") has violated the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 *et seq.,* by denying her a reasonable accommodation for her disability that would allow her to lease her condominium unit while she undergoes treatment at an in-patient rehabilitation facility. Vignola further claims that the Condo Association's attorney, Defendant Pamela Park (of the law firm Kovitz Shifrin Nesbit, which is also named as a Defendant) violated the FHAA by demanding proof of her disability as a condition of considering her accommodation request. Lastly, Vignola claims that the Condo Association's by-laws contain an occupancy limit that violates the FHAA's prohibition on familial-status discrimination. Now before the Court is Vignola's motion for a preliminary injunction that would require the Condo Association to allow her requested accommodation. For the reasons stated below, the motion (Dkt. No. 6) is denied.

### BACKGROUND

In 2013, at the age of 93, Vignola fell in her condo at 151 North Kenilworth. (Vignola Aff. ¶ 3, Pl. Mot. for Prelim. Inj., Ex. A, Dkt. No. 6-1.) Since the fall, Vignola has suffered from a

mobility-related disability, requiring 24-hour assistance in a rehabilitation facility. (*Id.* ¶¶ 3–4.) The goal of Vignola's treatment is for her to recover so that she can return to her home. (*Id.* ¶ 5.) Because Vignola cannot afford both to maintain her home and to pay the costs of the rehabilitation facility, she has asked that the Condo Association allow her to lease her unit. (*Id.* ¶¶ 6–7.) The Condo Association thus far has maintained that she cannot lease her home unless she first lists it for sale for a period of one year. (*Id.* ¶ 8.) But if Vignola were to list the unit and it sold, she would not be able to return home when her treatment is complete. (*Id.* ¶ 9.) She claims that she would then have lost her home solely because of her disability and her need for disability-related care. (*Id.*) Vignola asked the Condo Association to grant an exception to the list-before-lease requirement—that is, to allow her to rent her unit without first listing it for sale. (*Id.* ¶ 11.) In response, the Condo Association requested proof of her disability. (*Id.* ¶ 12.) Despite her compliance with that request, the Condo Association denied, and continues to deny, Vignola's request for an accommodation. (*Id.*)

Vignola now seeks a preliminary injunction enjoining the Condo Association from continuing to deny the requested accommodation, which she claims is a violation of the FHAA. She contends that an injunction is necessary to preserve the status quo between the parties and to prevent her from suffering irreparable harm (*i.e.*, the potential loss of her home). The Condo Association, on the other hand, argues that its list-before-lease rule is causing harm to Vignola, if at all, not on account of her disability but because she cannot afford to pay for two residences simultaneously. The Condo Association further argues that its refusal to waive the requirement is motivated by its fiduciary duty to treat all unit owners equally, not by any discriminatory animus toward Vignola's disability.

**DISCUSSION**

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotation marks omitted). In deciding whether to grant preliminary injunctive relief, a court must, as a threshold matter, determine whether the moving party has demonstrated: (1) some likelihood of success on the merits of the underlying claim; (2) the absence of an adequate remedy at law; and (3) the suffering of irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets those threshold requirements, the court then must balance the harm to the non-moving party if preliminary relief is granted against the harm to the moving party if relief is denied, and also consider the consequences to the public interest of granting or denying relief. *Id.* at 11–12. The equitable balancing analysis employed by the Seventh Circuit involves a "sliding scale" approach, "weighting harm to a party by the merit of his case." *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007).

**I.     Likelihood of Success on the Merits**

Vignola's request for a preliminary injunction in this case fails at the first hurdle: she has not presented evidence sufficient to support a likelihood of a success on the merits of her FHAA claim.

The FHAA makes it illegal (1) to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap," and (2) to

"discriminate against any person in the terms conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. §§ 3604(f)(1)-(2). Unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prevail on her reasonable accommodation claim, Vignola must show that the requested accommodation is reasonable and necessary to afford her an equal opportunity to use and enjoy her condo unit. *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002).

Determining the reasonableness of a requested accommodation requires a highly fact-specific inquiry that balances the needs of the parties. *Id.* at 784. Generally, "[a]n accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Id.* (quoting *Vande Zande v. Wis. Dep't of Admin.,* 44 F.3d 538, 543 (7th Cir. 1995)). With respect to whether her requested accommodation is necessary, Vignola must establish that, without it, she will be denied an equal opportunity to use and enjoy her condo. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). The term "necessary" is linked to the goal of equal opportunity, and the Seventh Circuit has made clear that "the 'equal opportunity' element limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified." *Id.* "Instead, the statute requires only accommodations necessary to ameliorate the effect of the plaintiff's disability[.]" *Id.* To enforce this limitation, courts faced with a potentially discriminatory rule must ask "whether the rule in question, if left unmodified, hurts 'handicapped people *by reason of their handicap*, rather than . . . by virtue of what they have in common with other people, such as a limited amount of money to spend on

housing." *Id.* (quoting *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999)) (emphasis in original).

The problem for Vignola is not the requirement that her requested accommodation be reasonable, which, as noted above, is usually a fact-intensive inquiry. Rather, her primary obstacle is her inability to show that the requested accommodation is necessary to allow her an equal opportunity to use her home. The case law applying the above-referenced limitation to claims similar to Vignola's—that is, claims seeking modifications or exceptions to policies limiting access to property that, on their faces, apply equally to everyone seeking access to the property regardless of whether they are disabled—is simply not on her side. *See, e.g.*, *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003) (affirming the district court's conclusion that, because the service of water is something that is needed by all people, the city's failure to provide water to plaintiffs' property did not hurt plaintiffs' residents by reason of their disability); *Riggs v. Howard*, 234 F.3d 1273 (7th Cir. 2000) (rejecting the plaintiff's reasonable accommodation claim because she did not relate her alleged inability to obtain an affordable apartment to her status as a disabled person).

Vignola faces a difficult, if not insurmountable, task in attempting to show that the potential loss of her home is due to her disability as opposed to her lack of financial means to keep her condo while staying at the rehabilitation facility. It is difficult, at this stage, to see how Vignola will be able to show that her situation is different from any other individual who while not disabled must live away from his or her primary residence for an undetermined period of time and cannot afford to maintain two residences. Does the law entitle Vignola to an accommodation that would not be available to someone transferred temporarily for work or who must move temporarily to care for a sick relative? Under her view, it seems that it would.

Vignola attempts to distinguish those situations from her own by arguing that the temporarily transferred employee or short-term caregiver would still have a place to live if their condos sold (*i.e.*, wherever they were currently living), whereas Vignola will have nowhere to go once her treatment is complete. Thus, she contends, it is her disability-necessitated stay in a rehabilitation facility that would cause the list-before-lease rule to deprive her of her home. But this effort to distinguish her situation fails for at least two reasons. First, there is no evidence that Vignola would have nowhere else to live—for instance, with family or in a retirement home—if her condo sold. Second, there is no basis to assume that, in the examples cited above, the individuals' temporary housing would be available indefinitely. Someone who is transferred for work may be living in temporary corporate housing. And someone who is caring for, and presumably living with, a sick relative would be without a place to live if the relative sold his or her home to move into an in-patient facility or nursing home.

There is no indication in the record that, for example, Vignola would not be permitted to keep her unit empty during her rehabilitation or, once she is released from the rehabilitation facility, to have in-home care at the condo to enable her to live there. Put simply, if Vignola could afford both to stay at the rehabilitation facility and to keep her condo without leasing it, there is no indication that the Condo Association would take any steps to force her to sell. Thus, the list-before-lease rule harms her because she has a limited amount of money to spend on housing (as do most people), not because she is disabled. The Seventh Circuit has made clear that in such cases there is no duty to modify, or make an exception to, the rule at issue.

In an attempt to overcome this obstacle and show a causal connection between the denial of her requested accommodation and her disability, Vignola asserts that the application of the list-before-lease rule in her case is a pretext for discrimination. She contends that the requirement is

illusory—indeed, that no such requirement exists—because it does not appear in the Condo Association's by-laws. However, the by-laws do require the Condo Association's consent before a unit may be leased. (*See* Def. Resp. in Opp. to Mot. for Prelim. Inj. Ex. 1-A at 4, Dkt. No. 37-2.) And the current "Leasing Request Guidelines" clearly state that prior to requesting permission to lease a unit, the unit must be listed with the Multiple Listing Services ("MLS") for a minimum of one year. (Palombi Aff. ¶¶ 3–4 & Ex. C, Def. Resp. in Opp. to Mot. for Prelim. Inj., Exs. 1, 1-C, Dkt. Nos. 37-1, 37-6.) The affidavit submitted by the Condo Association President states that the new Leasing Request Guidelines were adopted during a March 12, 2013 Condo Association meeting, before Vignola's situation became an issue. (*Id.* ¶ 5.) Thus, the list-before-lease requirement does not appear to be merely illusory. Although it does not appear that the Leasing Request Guidelines would prohibit the Condo Association from making a special hardship exception for Vignola, the Court cannot say at this stage that it was required to do so.

Vignola further asserts that although the list-before-lease requirement appears in the Leasing Request Guidelines, they have not been treated as a clearly adopted policy. In support, she points to an affidavit prepared by one of her sons, in which he states that when he asked the Condo Association if his mother could lease her unit, he was not notified of the listing requirement. (D. Vignola Aff. ¶ 3, Pl. Ev. Sub. in Supp. of Mot. for Prelim. Inj., Ex. C, Dkt. No. 33-4.) Instead, he was told that a "no rental" policy was in effect. (*Id.*) Vignola also claims that the list-before-lease rule is not applied consistently or uniformly, as other owners in the building have been permitted to rent their units without first listing them for sale. She again relies on her son's affidavit, in which he states that there are renters on the sixth floor (in Unit 6G) of 151 North Kenilworth and that he has seen other renters in the building as well. (*Id.* ¶¶ 4, 8.) Another of Vignola's sons provided in-court testimony to the same effect, although he clarified that the

owner of Unit 6G leases individual rooms in her three-bedroom condo, not the entire unit. He also testified that when his brother informed members of the Condo Association about the renters in 6G during a Condo Association meeting, all but one of them appeared already to have been aware of the situation.

The Condo Association has objected to the in-court testimony about what happened at its meeting as hearsay because the son who testified was merely repeating what he had learned from his brother who had actually attended the meeting. The Court need not decide whether the testimony is admissible, however, because even accepted at face value it does not indicate that Vignola is likely to prevail on her claim. Leasing individual rooms in a condo unit is not the same as leasing the entire unit. Moreover, the son who testified did not know whether the Condo Association members actually knew about the 6G renters previously or whether the Condo Association took any action after finding out. Nor did he know whether the owner of 6G had listed her condo for sale on the MLS prior to leasing rooms or instead asked for and received an exception to that requirement. And, perhaps most importantly, there is no evidence establishing that the owner of 6G is not disabled. In sum, Vignola has presented no evidence (other than mere speculation) suggesting that other, non-disabled unit owners have been permitted to lease their condos without first listing them for sale.

Finally, Vignola claims that certain statements made by Defendant Park show that the Condo Association denied the requested exception because it concluded, based on information provided by her doctor, that she is unlikely ever to return to her condo. But refusing Vignola a waiver of the list-before-lease rule because she is unlikely ever to return to her home is not the same as doing so because of her disability. The fact that her disability is the reason she may be unable to return home does not make the Condo Association's decision discriminatory. Vignola

has presented no evidence from which this Court could conclude that the Condo Association would act differently if the reason for her perceived inability to return home were something other than her disability. Again, there is nothing to suggest that the Condo Association would make a different decision if it concluded that a unit owner who had been transferred for work or one who had moved to care for a sick relative was unlikely to return home.

For the reasons discussed above, Vignola has failed to show the requisite likelihood of success on the merits of her reasonable accommodation claim, at least as it is currently pleaded.[1] Her motion for a preliminary injunction therefore must be denied. *See Abbott Labs*., 971 F.2d at 11 (if the moving party fails to meet one of the threshold requirements for a preliminary injunction, a court's inquiry is over and the injunction must be denied). In reaching this conclusion, the Court has kept in mind that Vignola is seeking a mandatory injunction—that is, one that seeks to compel the non-moving party to take a particular action—which is a type of relief that the Seventh Circuit has cautioned should be viewed cautiously and issued sparingly. *See Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978); *Graham v. Med. Mutual of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Vignola argues that the preliminary injunction is necessary to preserve the status quo, which she characterizes as her ownership of the condo. In fact, Vignola is seeking to compel a change in the status quo (which is actually Vignola living in the rehabilitation

---

[1] As noted above, Vignola's complaint asserts two additional claims. The first is a claim against Defendants Park and Kovitz Shifrin Nesbit for their alleged interference with Vignola's fair housing rights. That claim is irrelevant to the instant motion for preliminary relief on Vignola's reasonable accommodation claim against the Condo Association. The second is a claim against the Condo Association for its alleged violation of the FHAA's prohibition on familial discrimination. Vignola alleges that the by-laws unreasonably limit occupancy to two persons per bedroom and that, if she were to lease her home, she would be forced to comply with that limit (for instance, by having to turn away a couple with a child that is interested in renting her one-bedroom unit), thereby violating the FHAA. Vignola is not seeking any form of injunctive relief on that claim, however, so it need not be addressed for purposes of the present motion.

facility and separately maintaining her currently-uninhabited condo): she is seeking to turn her owner-occupied unit into a rental unit.

## II. II. Remaining Preliminary Injunction Factors

The Seventh Circuit has advised that when a district court decides that the moving party has not satisfied one of the threshold requirements, the court should nonetheless conduct at least a cursory examination of each preliminary injunction consideration, including the balance of harms. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1087. The two remaining threshold requirements—irreparable harm and lack of an adequate remedy at law—tend to merge. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, No. 11-cv-6771, 2011 WL 5325545, at *5 (N.D. Ill. Nov. 3, 2011) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). That is because as "[a]n injury is 'irreparable' when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard." *Id.* (citing *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997)). Vignola has a strong case that the potential loss of her home constitutes irreparable harm for which there is no adequate remedy at law. Indeed, the Seventh Circuit has held that "a given piece of property is considered to be unique, and its loss is always an irreparable injury." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982). At least one court in this District has taken that to mean that "there can be no adequate remedy at law for loss of a home." *In re Ameriquest Mortgage Co.*, No. 05-cv-7097, 2006 WL 1525661, at *5 (N.D. Ill. May 30, 2006). This Court is inclined to agree, particularly when the plaintiff has resided at his or her home for over 20 years, as is the case here.

Turning to the balance of harms analysis, the Court must weigh the irreparable harm that Vignola would endure without the protection of the preliminary injunction against any irreparable

10

harm the Condo Association would suffer if the Court were to grant the requested relief. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086 (citing *Abbott Labs.*, 971 F.2d at 11-12). In doing so, the Court uses a sliding scale approach: the more likely Vignola is to succeed on her underlying claim, the less heavily the balance of harms must weigh in her favor; the less likely she is to succeed, the more heavily the balance of harms must weigh in her favor. *See id.* The Court has little doubt that whatever harm the Condo Association would suffer from granting an exception to the list-before-lease rule and allowing Vignola to rent her unit pales in comparison to the loss of one's home.[2] This is particularly true given that there has been no representation that Vignola is delinquent in her obligations to the Condo Association. But no matter how heavily the balance of harms may weigh in her favor, Vignola has failed to show a likelihood of success on the merits, and that dooms her preliminary injunction motion.

## CONCLUSION

For the reasons stated above, Vignola's motion for a preliminary injunction (Dkt. No. 6) is denied.

ENTERED:

Dated: November 2, 2016

_____
Andrea R. Wood
United States District Judge

---

[2] The Condo Association argues that Vignola's harm is not the potential loss of her home but instead the inability to lease her unit and the financial difficulties she faces as a result. Even accepting that position, the Condo Association's claimed harm—potentially having to make exceptions to the rules for everyone—is speculative and does not outweigh the hardship of Vignola's financial situation.